UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BANGERT TRACTOR SALES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08CV00172 LMB |
| ) | |
| KUBOTA TRACTOR CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This action is before the Court after a two-day bench trial, held June 21-22, 2010. The parties filed Proposed Findings of Fact and Conclusions of Law. (Docs. No. 54, 55). In his Petition, originally filed in the Circuit Court of Cape Girardeau County, Missouri, plaintiff claims that defendant breached a farm equipment dealership agreement and violated Missouri dealer termination statutes. Plaintiff seeks a judgment of damages, attorney's fees and costs. Having considered the pleadings, trial briefs, exhibits, and proposed findings of fact and conclusions of law submitted by the parties, the court makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff,[1] who was a farm equipment dealer, entered into a Kubota Dealers Sales and Service Agreement with defendant on October 12, 2004 ("Agreement"). Pursuant to the

---

[1] Although the named plaintiff in this matter is Bangert Tractor Sales, Inc., a Missouri corporation, Rick Bangert is the corporation's President and sole shareholder, and was plaintiff's only witness at trial. The parties refer to plaintiff as "he" in the pleadings. The court will also refer to plaintiff as such.

Agreement, defendant has a security interest in all of plaintiff's equipment regardless of whether it is paid for or remains unpaid for. On April 12, 2007, plaintiff notified defendant that he would be voluntarily terminating the Agreement effective May 17, 2007. The terms of the Agreement provided plaintiff the right to terminate the Agreement upon thirty days notice to defendant. The Agreement gave defendant the option to repurchase from plaintiff upon termination any new, complete, unused, undamaged, current and saleable products purchased by plaintiff at the net invoice price paid by plaintiff.

**Wholegoods**

On April 24, 2007, defendant notified plaintiff by letter of the procedure in which the parties would engage to terminate the Agreement. The letter noted that the return of defendant's merchandise would be governed by Revised Missouri Statute, Chapter 407. The letter further indicated that plaintiff's property would be inspected by Regional Sales Manager Chris Flock to determine whether plaintiff's merchandise was "new, unused, undamaged and complete." Mr. Flock came to plaintiff's dealership to inspect plaintiff's merchandise on May 10, 2007, and May 17, 2010. Although the parties disagree about what happened at these meetings, it is undisputed that no agreement was reached between plaintiff and defendant as a result of the meetings.

In a letter dated June 11, 2007, defendant requested that plaintiff transfer all Kubota equipment in his possession to Davis Farm Supplies, Inc. in Perryville, Missouri, so that the equipment could be inspected and the appropriate amount of credits to plaintiff could be determined. Plaintiff responded to defendant's letter by stating via fax "Thanks for your help." Plaintiff transported all of Kubota's equipment, or "wholegoods," to Davis Farm Supplies, Inc. on June 26, 2007.

On August 23, 2007, defendant sent plaintiff a letter regarding the disposition of the wholegoods. Defendant notified plaintiff that it had deducted those items which plaintiff purchased more than twenty-four months prior to the notice of termination in accordance with Section 407.870(6) of the Missouri statute. Defendant also indicated that it had made deductions for items which were damaged and/or incomplete, in accordance with Section 407.870(4) of the Missouri statute. Defendant notified plaintiff that he would receive full credit for items that were purchased within the preceding twenty-four months and that were undamaged and complete. Defendant indicated that, prior to the issuance of credits, plaintiff owed defendant $170,289.89 for wholegoods. Defendant stated that, according to its inspection, plaintiff was entitled to a credit for the wholegoods returned in the amount of $172,411.61.[2] Defendant instructed plaintiff to advise defendant whether he accepted the proposed disposition of the wholegoods items. Defendant stated that it would immediately issue plaintiff a check in the amount of $2,121.72 if he accepted the proposed disposition. With regard to the items purchased more than twenty-four months prior, defendant indicated that it would either return the items to plaintiff or work with plaintiff and Davis Farm Supplies to sell the items.

In a letter dated August 30, 2007, plaintiff indicated that he disagreed with defendant's proposed disposition and would not accept the proposal. Plaintiff stated that the timing of defendant's August 23, 2007 letter made it impossible for defendant to comply with the sixty day time frame required by Missouri law. Plaintiff notified defendant that he was commencing legal proceedings. Plaintiff's August 30, 2007 letter, along with plaintiff's testimony at trial, reveals

---

[2]This amount reflects $136,588.65 offered for damaged items and $35,822.96 for new and undamaged items. As such, if defendant did not credit plaintiff for damaged items, plaintiff would still owe defendant approximately $134,177.04.

that plaintiff believed he was entitled to a complete refund for all equipment regardless of whether the equipment was old or damaged.

Plaintiff does not dispute that the items of equipment defendant listed as damaged were in fact damaged. Plaintiff acknowledged that weathering can damage equipment. Although plaintiff has suggested that the damage could have occurred after the items had been transferred to Davis Farm Supplies, he has provided no support for this theory. Plaintiff has offered no evidence that the items found to be damaged were not damaged in the way defendant described.

After plaintiff refused to engage in further discussions with defendant regarding the disposition of the old and damaged equipment, defendant began to sell the equipment. Defendant had the ability to sell the equipment for a higher price than plaintiff, as plaintiff was no longer a Kubota dealer. Defendant urges that it acted both in defendant's best interest and plaintiff's best interest in selling the equipment for the best price it could obtain. Defendant did not charge plaintiff for its efforts in selling the equipment. Defendant credited plaintiff's account the entire amount received from the sale of equipment, as is reflected in defendant's dealer machine statements.

Defendant tendered plaintiff $40,676.72 on February 13, 2008 for wholegoods. When plaintiff refused to accept that tender, plaintiff deposited the funds into an interest-bearing account for the benefit of plaintiff. Defendant paid to plaintiff the sum of $40,676.72 plus earned interest on November 13, 2009.

**Parts**

Plaintiff returned parts to defendant's Dallas warehouse on August 7, 2007. On September 10, 2007, defendant completed its inspection of the parts and posted a credit to plaintiff in the amount of $21,084.96. Defendant indicated that it did not accept the return of

$624.86 in parts and requested that plaintiff advise defendant as to how he wished to dispose of these parts. Defendant has stated that these parts were rejected because they were not in new, unused or undamaged condition.

In a letter dated September 18, 2007, plaintiff requested detailed invoices for all parts accepted for return and all parts rejected. Plaintiff indicated that October 5, 2007 was defendant's deadline for payment to plaintiff for the returned parts.

On October 4, 2007, defendant indicated that it had credited plaintiff $21,084.96 and then set off a sum of $8,239.74 against this figure for previous unpaid parts invoices, and issued plaintiff a check for the difference of $12,845.24. Defendant stated that it was holding the rejected parts valued at $624.86 for further inspection in light of plaintiff's September 18, 2007 letter.

In a letter dated October 11, 2007, plaintiff stated that defendant failed to comply with his request for information regarding the rejected parts. Plaintiff indicated that he would not accept the check in the amount of $12,845.24 because he did not want to jeopardize his claim against defendant. Plaintiff has offered no evidence showing that the rejected parts were new, unused, or undamaged.

On October 17, 2007, defendant advised plaintiff that plaintiff would not waive any rights by cashing the check.

On February 25, 2008, defendant indicated that further calculations revealed that defendant owed plaintiff a total of $9,585.39 for returned parts. Defendant again assured plaintiff that acceptance of the check would not constitute a waiver of plaintiff's rights. When plaintiff refused to accept this check, defendant placed the funds in an interest-bearing account for the

benefit of plaintiff. On November 13, 2009, defendant paid plaintiff this amount along with earned interest.

## **CONCLUSIONS OF LAW**

The Missouri dealer termination statutes govern in this action and provide as follows, in relevant part:

> Whenever any retailer enters into a written or oral contract with a wholesaler, manufacturer or distributor wherein the retailer agrees to maintain an inventory and the contract is terminated by the wholesaler, manufacturer, distributer or retailer or upon the retailer's retirement at sixty-two years of age or older, then the retailer may require the repurchase of the inventory as provided for in sections 407.850 to 407.885. In the event of the death of the retailer or the majority stockholder of a corporation operating as a retailer, the wholesaler, manufacturer or distributor shall repurchase the inventory as provided for in section 407.880. If the retailer has any outstanding debts to the wholesaler, manufacturer or distributor, then the repurchase amount may be credited to the retailer's account. All payments or allowances of credit due retailer shall be paid or credited within sixty days after the return of implements, machinery, attachments or repair parts. After sixty days all payments or allowances shall include interest at the rate stated in section 408.040, RSMo.

RSMo § 407.855.

> 1. The wholesaler, manufacturer or distributor shall repurchase that inventory previously purchased from him and held by the retailer at the date of termination of the contract. The provisions of sections 407.850 to 407.885 shall apply to the transferee of such wholesaler, manufacturer or distributor if such transferee acquired substantially all of the assets of such wholesaler, manufacturer or distributor. The wholesaler, manufacturer or distributor shall pay one hundred percent of the net cost of all new, unsold, undamaged and complete equipment, implements, machinery, and attachments and ninety-five percent of the current net price of all new, unused and undamaged repair parts. The retailer shall pay the cost of transportation to the nearest warehouse maintained by the wholesaler, manufacturer, or distributor, or to a mutually agreeable site. The wholesaler, manufacturer or distributor shall pay the retailer five percent of the current net price on all new, unused and undamaged repair parts returned to cover the cost of handling, packing and loading. The wholesaler, manufacturer or distributor shall have the option of performing the handling, packing and loading in lieu of paying the five percent for these services. The retailer shall pay the cost of transportation to the nearest warehouse maintained by the wholesaler, manufacturer, or distributor, or to a mutually agreeable site.

> 2. Upon payment of the repurchase amount to the retailer, the title and right of possession to the repurchased inventory shall transfer to the wholesaler, manufacturer or distributor.

RSMo. § 407.860.

> The provisions of sections 407.850 to 407.885 shall not require the repurchase from a retailer of:
>
> \*\*\*
> (4) Any equipment, implements, machinery, and attachments which are not in new, unused, undamaged, or complete condition;
>
> (5) Any repair parts which are not in new, unused, or undamaged condition;
>
> (6) Any equipment, implements, machinery or attachments which were purchased twenty-four months or more prior to notice of termination of the contract;

RSMo. § 407.870.

> If any wholesaler, manufacturer or distributor shall fail or refuse to repurchase any inventory as required by section 407.860, he shall be civilly liable for one hundred percent of the current net price of the inventory, plus any freight charges paid by the retailer, the retailer's attorney's fees, and court costs.

RSMo. § 407.875.

Pursuant to Missouri's statutory scheme outlined above, defendant had sixty days from the date plaintiff returned his wholegoods to make "all payments or allowances of credit due" to plaintiff. RSMo § 407.855. Defendant was not required, however, to pay plaintiff or credit plaintiff's account for items that were purchased twenty-four months or more prior to the notice of termination, or items which were not in new, unused, undamaged, or complete condition. RSMo § 407.870 (4), (6). Similarly, section 17.A(7) of the Agreement provided only for the repurchase of "new, complete, unused, undamaged, current and saleable" items.

Plaintiff returned his wholegoods to Davis Farm Supplies on June 26, 2007. On August 23, 2007, defendant informed plaintiff that his account received full credit for the items that were purchased within the preceding twenty-four months and were undamaged. Defendant also

proposed deductions for damaged equipment and offered to sell plaintiff's items that were more than two years old. Because defendant credited plaintiff's account fully for the new and undamaged items within sixty days from the date plaintiff returned the equipment, defendant complied with the terms of Section 407.855.

With regard to the parts, plaintiff returned the parts to defendant's warehouse on August 7, 2007. On September 10, 2007, defendant credited plaintiff fully for the new and undamaged parts and requested that plaintiff advise defendant as to how he wished to dispose of old or damaged parts. As such, defendant complied with Section 407.855 in crediting plaintiff for new and undamaged parts within sixty days from the date plaintiff returned them.

Plaintiff argues that defendant was required to pay plaintiff the full invoice price for all wholegoods and parts within sixty days of their return. With regard to the wholegoods, plaintiff contends that defendant missed this deadline by failing to pay him the $2121.72 defendant offered in its August 23, 2007 letter. Plaintiff contends that defendant is liable for interest, attorney fees, freight charges and punitive damages due to defendant's alleged failure to meet this deadline.

The flaw of plaintiff's argument is that plaintiff does not distinguish between items that are new and undamaged and those that are old or damaged. As previously discussed, the Missouri statute requires only that defendant credit plaintiff for new and undamaged items and defendant fulfilled this obligation. Plaintiff has presented no evidence to refute defendant's representation that certain items were more than twenty-four months old or damaged. In its August 23, 2007 letter, defendant offered to credit plaintiff for damaged wholegoods items, which would result in a balance owed to plaintiff in the amount of $2,121.72. Defendant, however, was not required to purchase this equipment under the Missouri statute. In fact, had defendant only credited plaintiff for the new and undamaged equipment as it is required to do under the Missouri statute, plaintiff

would still owe defendant approximately $134,000.00. As such, plaintiff did not violate Missouri law in failing to tender the check for $2,121.72 within sixty days of the return of the wholegoods.

Similarly, defendant complied with the Missouri statute in crediting plaintiff fully for new and undamaged parts within sixty days from the date plaintiff returned them. Plaintiff has offered no evidence to dispute defendant's contention that some of the returned parts, for which plaintiff had paid $624.86, were old or damaged. Defendant was not required to pay plaintiff for these parts. Defendant offered to hold the rejected parts for further inspection by plaintiff. On November 13, 2009, defendant paid plaintiff the final net balance due to plaintiff for returned parts, $9,585.39, with interest. The court finds that plaintiff is entitled to no additional recovery with respect to parts.

During trial, plaintiff appeared to argue that, in its June 11, 2007 letter, defendant agreed to purchase all wholegoods items at full price regardless of their age or condition. The record lacks support for this claim. Defendant's June 11 letter requested that plaintiff transfer Kubota equipment in his possession to Davis Farm Supplies "so that such equipment can be inspected and the appropriate amount of credits to your dealership can be determined." This is exactly what defendant did. After examining plaintiff's equipment at Davis Farm Supplies, defendant offered a proposed disposition on August 23, 2007. At no time did defendant offer to pay plaintiff the full price of old or damaged items nor does the Missouri statute require that it do so.

Plaintiff also suggested during trial that it was illegal for defendant to sell the equipment plaintiff returned to Davis Farm Supplies without paying plaintiff for it first. Plaintiff points to Section 407.860.2, which provides: "Upon payment of the repurchase amount to the retailer, the title and right of possession to the repurchased inventory shall transfer to the wholesaler, manufacturer or distributor." This provision, however, only applies to new and undamaged

equipment that defendant was obligated to purchase pursuant to Section 407.860.1. The equipment that defendant sold was old or damaged and therefore not subject to this provision. Accordingly, defendant did not violate Section 407.860.2 in selling plaintiff's old or damaged items prior to paying plaintiff for them.

Defendant offered to work with plaintiff to sell the rejected items in its August 23, 2007 letter. Plaintiff never responded to defendant's offer with a counter offer and refused to negotiate further with plaintiff regarding the disposition of old equipment. Defendant was forced to decide how to proceed to best protect its security interest. Under these circumstances, defendant determined that its interest, along with plaintiff's interest, would best be served by selling the equipment. Defendant presented evidence that it diligently sold the equipment at the highest price possible. Defendant credited plaintiff's account for the full amount obtained from the sale. The court finds that defendant was within its rights in selling the equipment and in fact acted in plaintiff's best interest in doing so.

In sum, the court finds that defendant complied with Missouri law and its agreement with plaintiff in fully crediting plaintiff's account for new and unused wholegoods and parts. Defendant then acted reasonably in selling plaintiff's old or damaged items for the highest price and crediting plaintiff for the full amount of the sale. Defendant owes plaintiff nothing further for wholegoods or parts. Finally, defendant does not owe plaintiff interest, attorney fees, freight charges or any other fees, as defendant fully complied with Missouri law in timely paying plaintiff for returned wholegoods and parts.

For the foregoing reasons, judgment will be entered in favor of defendant on plaintiff's Petition.


Dated this  18th  day of January, 2011.

                                                   /s/ Lewis M. Blanton
                                                   LEWIS M. BLANTON
                                                   UNITED STATES MAGISTRATE JUDGE